## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
## WICHITA FALLS DIVISION

| | | |
|---|---|---|
| **AMY JACKSON,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **Civil Action No. 7:13-CV-039-BL** |
| | § | |
| | § | |
| **CAROLYN W. COLVIN,** | § | |
| **Acting Commissioner of Social Security,** | § | |
| | § | |
| **Defendant** | § | **Assigned to U.S. Magistrate Judge** |

## MEMORANDUM OPINION AND ORDER TO DISMISS

Pursuant to 42 U.S.C. § 405(g), Plaintiff Amy Jackson seeks judicial review of the Commissioner of Social Security's decision, which denied her applications for a period of disability and disability insurance benefits under Title II of the Social Security Act. All parties consented to the jurisdiction of the magistrate judge, and the case was reassigned to this Court in accordance with 28 U.S.C. § 636(c).

After considering the pleadings, the briefs, and the administrative record, this Court affirms the Commissioner's decision and dismisses, with prejudice, Jackson's complaint.

## Statement of the Case

Following a hearing on October 6, 2011, an Administrative Law Judge (ALJ) determined on March 8, 2012, that Jackson was not disabled. Specifically, the ALJ held that Jackson's impairments did not meet or equal any of the impairments listed in Appendix 1 of the governing regulations, that she had the residual functional capacity (RFC) to perform less than a full range of light work with limitations, and that although she was not capable of performing her past

relevant work, she was capable of performing other jobs existing in significant numbers in the national economy. The Appeals Council denied review on February 12, 2013. Therefore, the ALJ's decision is the Commissioner's final decision and is properly before the Court for review. *See Higginbotham v. Barnhart*, 405 F.3d 332, 334 (5th Cir. 2005) (stating Commissioner's final decision "includes the Appeals Council's denial of [a claimant's] request for review").

### Factual Background

Jackson filed two applications for a period of disability and disability insurance benefits. (Tr. 24). The first filing, made July 21, 2009, was denied on September 17, 2009.[1] (Tr. 24, 191, 192). Jackson failed to appeal that denial. (Tr. 24). The second filing, which Jackson now presents to this Court for review, was made February 4, 2010. (Tr. 24, 191). In the second filing, Jackson claims she became disabled beginning on April 3, 2009 (hereinafter date of onset), due to knee problems, depression, memory problems, and stroke. (Tr. 84, 85, 86, 87, 191, 195, 201-05). Previously, Jackson worked for the state hospital as a nurse's aide, and as a beautician, janitor, turbine builder, finance manager, and a postal employee. (Tr. 42, 55, 76-77, 197, 207-14). Jackson has an eleventh grade education and completed training to become a beautician. (Tr. 55, 196).

Between 2008 and 2012, Jackson obtained treatment from a host of different facilities for her various ailments.[2] (Tr. 254-764). Notably, Jackson has a history of bilateral knee replacements. (Tr. 292-94). Jackson reports that her back, neck, and knees create aching, burning, stabbing, stinging, throbbing, and crushing pain continuously, on a daily basis. (Tr. 216). She claims that the persistence of the pain makes it hard for her to function normally and causes her to have to rest frequently during exertion. (Tr. 216). Jackson claims her impairments

---

[1] The record does not include any additional information regarding the first filing other than what is presented here.
[2] Medical records from several clinics are dated either after the hearing or after the ALJ decision issued. (*See* Tr. 686-764); Exhibits 28F-32F.

affect her ability to lift, squat, bend, stand, walk, sit, kneel, and climb stairs, and also affect her memory, ability to complete tasks, concentration, and ability to get along with others. (Tr. 228).

The extensive medical records indicate that most of Jackson's treatments were for pain and problems with her lower extremities. Records also indicate treatment for a sleep disorder, neck pain, and abdominal issues. Several doctors also noted that Jackson suffers from depression and anxiety, though no psychiatric medical records are available for the Court to review. Notably, between May 2008 and December 2011, Jackson visited Texas Hip and Knee Center for treatment of her lower extremity pains. (Tr. 287-94, 437-42, 454-56, 706-11). Between 2008 and 2011, Jackson visited United Regional Hospital for treatment of gastrointestinal issues, knee problems, obstructive sleep apnea (OSA), and anxiety attacks. (Tr. 364-736, 506-603, 629). Between 2009 and 2010, Jackson was treated at Reneau Rehab for rehabilitation of her knees. (Tr. 263-73, 329-53). In 2011, Jackson was treated at North Texas Rehab for her unstable ankles. (Tr. 604-28). In 2010, Jackson visited Clinics of North Texas for treatment of ankle pain and a fractured fibula that resulted from a motor vehicle accident. (Tr. 274-86, 323-24). Records from Carrell Clinic indicate that Jackson was seen between 2010 and 2012 for treatment of ankle and knee pain. (Tr. 325-28, 443-51, 457-59, 705, 712-15). Between June 2010 and August 2011, Jackson visited Dr. Jacob Rosenstein for neck pain. (Tr. 475-505). In September 2011, Jackson visited Heart Hospital of Plano for chest pain. (Tr. 657-80). Between August and October 2011, Jackson visited Neurology Associates of Arlington for dizziness, migraine headaches, and numbness in her right hand and foot. (Tr. 686-704). From March 2012 to July 2012, Jackson visited Medical City Dallas' emergency department for back and abdominal pain. (Tr. 716-64).

In April 2010, Jackson was ordered by Disability Determination Services (DDS) to appear for a psychiatric consultative examination. (Tr. 295-97). The consultative examiner (CE)

Dr. Richard Kownacki, Ph.D., observed that Jackson drove herself to the exam, and was well dressed and groomed with good hygiene. (Tr. 296). She was restless, and seemed depressed and anxious; she was alert and cooperative, thought processes were logical and coherent; judgment and insight were intact; and she did not experience hallucinations or psychotic behaviors. (Tr. 296). Dr. Kownacki did observe that her short term memory was weak, her attention and concentration were generally poor, and she was easily distracted. (Tr. 296). Dr. Kownacki diagnosed her with major depressive disorder of the recurring, moderate type, panic disorder without agoraphobia, generalized anxiety disorder, and borderline personality traits. (Tr. 296-97).

Jackson also underwent a psychiatric review technique on May 27, 2010. (Tr. 306-19). This report noted that Jackson suffered from affective disorders, anxiety-related disorders, and personality disorders. (Tr. 306). The reviewing physician did not appreciate any organic mental disorders, schizophrenic, paranoid, or other psychotic disorders, mental retardation, somatoform disorders, substance addiction disorders, or autistic or other pervasive developmental disorders. (Tr. 307-15). The physician noted that Jackson was moderately limited in performing activities of daily living, moderately restricted in maintaining social functioning, moderately limited in maintaining concentration, persistence, or pace, and did not have any periods of decompensation. (Tr. 316). Finally, the physician concluded that Jackson's alleged limitations were not fully supported by the medical evidence. (Tr. 318).

A physical RFC assessment dated May 22, 2010, showed that Jackson could occasionally lift/carry 20 pounds, frequently lift/carry 10 pounds, stand/walk (with normal breaks) for about 6 hours in an 8-hour work day, sit (with normal breaks) for a total of about 6 hours in an 8-hour workday, push/pull an unlimited amount, other than as shown for lift/carry. (Tr. 299). The RFC

assessment also notes that Jackson can only occasionally climb ramps and stairs, never climb ladders, ropes, or scaffolds, occasionally balance, frequently stoop, occasionally kneel, frequently crouch, and occasionally crawl. (Tr. 300). No manipulative, visual, communicative, environmental limitations were appreciated. (Tr. 301-02).

A mental RFC assessment dated May 27, 2010, showed that the following abilities were not significantly limited: (1) ability to remember locations and work-like procedures, (2) ability to understand and remember very short and simple instructions, (3) ability to carry out very short and simple instructions, (4) ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances, (5) ability to sustain ordinary routines without supervision, (6) ability to make simple work-related decisions, (7) ability to ask simple questions or request assistance, (8) ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes, (9) ability to maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness, (10) ability to be aware of normal hazards and take appropriate precautions, (11) ability to travel in unfamiliar places or use public transportation, and (12) ability to set realistic goals or make plans independently of others. (Tr. 320-21). The assessment shows that Jackson was only moderately limited in the following: (1) ability to maintain attention and concentration for extended periods, (2) ability to work in coordination with or proximity to others without being distracted by them, (3) ability to complete normal workday and workweek without interruptions from psychological symptoms and to perform at a consistent pace without unreasonable and lengthy rest periods, (4) ability to interact appropriately with the general public, (5) ability to accept instructions and respond appropriately to criticism from supervisors, and (6) ability to respond appropriately to changes in the work setting. (Tr. 320-21). Jackson was markedly limited in her ability to understand and remember

detailed instructions, and the ability to carry out detailed instructions. (Tr. 320).

## Standard of Review

A person is disabled if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 1382c(a)(3)(A), 423(d)(1)(A) (2012). Additionally, a claimant is disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); *see* 20 C.F.R. §§ 404.1505, 416.911. "'Substantial gainful activity' is work activity involving significant physical or mental abilities for pay or profit." *Masterson v. Barnhart*, 309 F.3d 267, 271 n.2 (5th Cir. 2002); 20 C.F.R. § 404.1572(a)-(b) (2013).

To evaluate a disability claim, the Commissioner follows "a five-step sequential analysis to determine whether (1) the claimant is presently working; (2) the claimant has a severe impairment; (3) the impairment meets or equals an impairment listed in Appendix 1 of the Social Security Regulations; (4) the impairment prevents the claimant from doing past relevant work; and (5) the impairment prevents the claimant from doing any other substantial gainful activity." *Audler v. Astrue*, 501 F.3d 446, 447–48 (5th Cir. 2007); *see also* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). "The claimant bears the burden of showing he is disabled through the first four steps of the analysis; on the fifth, the Commissioner must show that there is other substantial work in the national economy that the claimant can perform." *Audler*, 501 F.3d at 448. Before proceeding to Steps 4 and 5, the Commissioner must assess a claimant's RFC. *Perez v. Barnhart*,

415 F.3d 457, 461 (5th Cir. 2005). RFC is defined as "the most [a claimant] can still do despite [the claimant's] limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).

This Court's review of the Commissioner's decision to deny disability benefits is limited to an inquiry of whether substantial evidence supports the Commissioner's findings, and whether the Commissioner applied the proper legal standards. *Waters v. Barnhart*, 276 F.3d 716, 718 (5th Cir. 2002) (citing *Estate of Morris v. Shalala*, 207 F.3d 744, 745 (5th Cir. 2000)). Substantial evidence "is more than a mere scintilla and less than a preponderance" and includes "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Masterson*, 309 F.3d at 272; *Watson v. Barnhart*, 288 F.3d 212, 215 (5th Cir. 2002). To determine whether the Commissioner's decision is supported by substantial evidence, the Court weighs four elements of proof: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) the Claimant's subjective evidence of pain and disability; and (4) the claimant's age, education, and work history. *Martinez v. Chatter,* 64 F.3d 172, 174 (5th Cir. 1990); *Wren v. Sullivan*, 925 F.2d 123, 126 (5th Cir. 1991). If substantial evidence supports the Commissioner's findings, then the findings are conclusive and the court must affirm the Commissioner's decision. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 390, 91 S. Ct. 1420, 1422, 28 L. Ed. 2d 842 (1971); *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000). The court may not reweigh the evidence, try the issues *de novo*, or substitute its judgment for the Commissioner's, even if the court believes that the evidence weighs against the Commissioner's decision. *Masterson,* 309 F.3d at 272. Moreover, "'[c]onflicts in the evidence are for the Commissioner and not the courts to resolve.'" *Id*. (quoting *Newton*, 209 F.3d at 452).

## Discussion

At issue on appeal is whether (1) the ALJ properly applied the doctrine of *res judicata*, (2) the ALJ properly considered Jackson's impairments in combination, (3) the sit/stand option was proper, (4) the ALJ properly considered the DDS opinions, and (5) the ALJ properly assessed Jackson's credibility. (Pl.'s Br. 4-15).

After considering the record as a whole, the ALJ followed the five-step sequential evaluation process and determined that Jackson was not disabled within the meaning of the Social Security Act. (Tr. 24-44). At Step 1, the ALJ found that Jackson did not engage in substantial gainful activity since September 18, 2009. (Tr. 26). At Step 2, the ALJ found that Jackson "had the following 'severe' physical and mental impairments: status post bilateral total knee replacement, right knee in 2005 and left knee in 2007; disorders of the cervical spine, discogenic and degenerative; diverticulitis; obstructive sleep apnea; obesity; headaches; major depressive disorder, recurrent, moderate; panic disorder, without agoraphobia; generalized anxiety disorder, and borderline personality traits." (Tr. 27-36). At Step 3, the ALJ found that Jackson did not have an impairment or combination of impairments that meets or equals one of the listings under the applicable regulations. (Tr. 36-38). Before proceeding to steps 4 and 5, the ALJ assessed Jackson's RFC and determined that she retained the ability to

> perform less than a full range of "light work,". . . except she can only: occasionally climb ramps and stairs, balance, and stoop; never kneel, crouch, crawl, and climb ropes, ladders, or scaffolds; perform no work overhead; no use of the lower extremities for the operation of any operation of pedals or controls or for pushing or pulling; must avoid exposure to workplace hazards, such as dangerous moving machinery, unprotected heights, and open flame; avoid exposure to the temperatures of 80 degrees or more and 60 degrees or less; avoid exposure to high humidity and wetness; can perform jobs tasks while sitting or standing, so she may sit or stand at will; understand, remember, and carry out only simple instructions; make only simple work related decisions; deal with only occasional changes in work process and environment; and may have a 10% to

15% reduction in production from that of the average employee, due to deficits in concentration, persistence, and pace.

(Tr. 38-42). At Step 4, the ALJ determined that Jackson could not perform any past relevant work. (Tr. 42). Finally, at Step 5, the ALJ found that Jackson could perform jobs that exist in significant numbers in the national economy. (Tr. 42).

## I.      Any Impropriety in the Application of *Res Judicata* is Harmless Error

In her first point of error, Jackson claims that the ALJ improperly invoked the doctrine of administrative *res judicata* in finding that she "could not allege disability before September 18, 2009." (Pl.'s Br. 4; Tr. 24).    Specifically, Jackson argues that ALJ's application of SSR 91-5p was error because she was "never even asked" if good cause existed to reopen her past disability claim, and thus, SSR 91-5p cannot apply to her claim. (Pl.'s Br. 4). She also argues that she "had an automatic right to a reopening of her first denial for *any* reason within twelve months of the date of her last denial pursuant to 20 C.F.R. § 416.1488." (Pl.'s Br. 4).

Only final decisions of the Commissioner of Social Security made after a hearing are entitled to judicial review. 42 U.S.C.A § 405(g); *Buckley v. Heckler*, 739 F.2d 1047 (5th Cir. 1984). The ALJ decides if there is cause to dismiss or refuse to consider one or more of the presented issues if he determines the doctrine of *res judicata* applies. 20 C.F.R. § 404.957(c)(1); 20 C.F.R. § 416.1457(c)(1). Even when *res judicata* is appropriate, discretion to reopen a prior disability application for "good cause" under the applicable regulations lies with the Commissioner. 20 C.F.R. § 404.988(b); 20 C.F.R. § 404.989. "[F]ederal courts have no subject matter jurisdiction to review a decision by the Secretary not to reopen a case." *Robertson v. Bowen*, 803 F.2d 808, 810 (5th Cir. 1986). Moreover, section 405(g) does not "authorize judicial review of alleged abuses of agency discretion in refusing to reopen claims for social security benefits." *Califano v. Sanders*, 430 U.S. 99, 107-08 (1977). Finally, decisions of the applicability

of *res judicata* are not final decisions on the merits of a claim and thus, a court may not review the Commissioner's application of *res judicata* unless claimant raises a colorable constitutional claim. *Hensley v. Califano*, 601 F.2d 216 (5th Cir. 1979).

First, Jackson's argument regarding SSR 91-5p is misplaced. As the government correctly points out, the ALJ "did not state that Jackson did not provide good cause; rather, he stated that SSR 91-5 did not apply to the fact[s] of this case." (Def.'s Br. 4; Tr. 24).

Second, because Jackson failed to raise a colorable constitutional claim, this Court does not have subject matter jurisdiction to review the Commissioner's decisions to apply *res judicata* or to decline reopening of the prior claim.

Finally, for the sake of argument, even if the ALJ did commit error, such error is harmless. It is inconceivable that the ALJ would find Jackson disabled between April 3, 2009, and September 18, 2010. The record is replete with evidence showing that Jackson's ailments were being adequately treated with positive results. A post-operative exam performed September 2009 at the Texas Hip and Knee center showed that Jackson was progressing well and was able to ambulate without an assistive device. (Tr. 290). Physical exam revealed she had stable range of motion with solid ligamentous testing. (Tr. 290). Jackson was able to walk and do most activities. (Tr. 289). Post-operative X-rays showed good post-operative alignment of the knee on multiple views. (Tr. 289). Jackson's OSA was being treated with the use of a CPAP machine, which she reported afforded her better-than-normal sleep. (Tr. 408). Records from Reneau Rehab show that Jackson was improving movement in her knee after just five sessions. (Tr. 264). Range of motion on her knee improved, there was decreased edema, and hip flexion/extension was 4/5 and 4+/5 respectively. (Tr. 264). All other lower extremity strengths were within normal limits.

(Tr. 264). After thirteen sessions, Jackson reported she was able to return to normal activities without increased pain. (Tr. 263).

Although Jackson was involved in a motor vehicle accident in January 2010, she received extensive rehabilitative treatment. (Tr. 274-86, 323-24).  Records from Texas Hip and Knee show that despite pain from the accident, both knees seemed stable, and the right lower extremity did not suffer a significant decrease in range of motion. (Tr. 288). Radiographs showed no major malalignment and stable arthroplasties on both knees. (Tr. 288). Records from Reneau Rehab show that Jackson noted she felt stronger while walking, was able to mow the lawn, and noticed improvements when walking up inclines. (Tr. 336, 337, 338, 339, 340). A fibular fracture was treated and rehabilitated with physical therapy. (Tr. 274-86, 323-24). Jackson was also admitted for stroke-like symptoms but, after extensive investigation, doctors opined that the episode was stress-induced; Jackson was discharged in stable condition. (Tr. 392-97).

Unless the substantial rights of a party have been affected, remand will not issue. *Anderson v. Sullivan*, 877 F.2d 630, 634 (5th Cir. 1989). Jackson fails to show that any of her substantive rights were affected by the ALJ's decision to bar disability allegations between April 3, 2009 and September 18, 2010. Moreover, the evidence does not support a finding of disability between those months, or any of the months at issue. Thus, this Court refuses to issue remand and overrules this point of error.

## II.     The ALJ did not Err in his Consideration of Jackson's Impairments

In her second point of error, Jackson argues that the ALJ erred by failing to consider the combined effects of her impairments. (Pl.'s Br. 6). Jackson posits that because the ALJ did not mention how the combined impairments affected her ability to work, this Court should issue remand. (Pl.'s Br. 6).

The law promulgates that a claimant may be found disabled due to a single impairment or a combination of impairments. 42 U.S.C.A. § 423(d)(2)(B). Thus, the ALJ is required to consider all of the claimant's impairments, individually and in combination, before making a disability determination. *Scott v. Heckler*, 770 F.2d 482 (5th Cir. 1985).

On page 25 of the record, the ALJ acknowledges that it is his duty to consider Jackson's impairment or combination of impairments in his Step 3 decision. (Tr. 25). The ALJ also explicitly found that Jackson did not have "an impairment or *combination of impairments*" that meets or equals a listed impairment. (Tr. 36) (emphasis added). In his RFC determination, the ALJ states that "[i]n arriving at [his] decision in this case, [he] considered all the evidence of record . . . to determine what impairment or *combination of impairments*" interfered with Jackson's abilities to work. (Tr. 38) (emphasis added). As the government correctly argues, an ALJ is not required articulate every consideration in his opinion. (Def.'s Br. 7); SSR 96-8p, 1996 WL 374184 at *7 (Jul. 2, 1996). The Rulings only mandate an ALJ to discuss and describe how the evidence on the record supports each conclusion. SSR 96-8p, at *7. There is no requirement that the ALJ narrate in his opinion exactly how he considered combinations of impairments. Moreover, there is no evidence that the ALJ did not consider the combined effect of Jackson's impairments on her ability to work. This contention is overruled.

### III.   The Sit/Stand Option was Proper

Jackson next argues that the sit/stand option afforded to her was improper. (Pl.'s Br. 8-9). Specifically, she argues that these options are "not particularly suited for unskilled work, only executive positions." (Pl.'s Br. 8 (citing SSR 83-12, 1983 WL 31253)). Jackson also argues that because the dictionary of occupational titles (DOT) does not provide any guidance for sit/stand options, the vocational expert (VE) could not correctly testify. (Pl.'s Br. 8-9).

SSR 83-12 addresses sit/stand options and the situations in which the option is applicable. The Ruling cautions that unskilled jobs may not be conducive to such an option. SSR 83-12. However, the Ruling goes on to state that in such cases where there is an "unusual limitation of ability to sit or stand, a [VE] should be consulted to clarify the implications for the occupational base." SSR 83-12, at *4. In *Carey v. Apfel* the Fifth Circuit held that "the DOT is not comprehensive, in that it cannot and does not purport to include each and every specific skill or qualification for a particular job." 230 F.3d 131, 145 (5th Cir. 2000) (citing *Fields v. Bowen*, 805 F.2d 1168 (5th Cir. 1986)). Additionally, "the DOT job descriptions should not be given a role that is exclusive of more specific [VE] testimony with respect to the effect of an individual claimant's limitations on [her] ability to perform a particular job." *Carey*, 230 F.3d at 145. Moreover, the DOT "simply gives a general description of the [job] duties involved." *Fields*, 805 F.2d at 1171. In recognizing the utility of a VE, the Fifth Circuit stated:

> The value of a [VE] is that he is familiar with the specific requirements of a particular occupation, including working conditions and the attributes and skills needed. A [VE] is able to compare all the unique requirements of a specified job with the particular ailments a claimant suffers in order to reach a reasoned conclusion whether the claimant can perform a specific job.

*Fields*, 805 F.2d at 1170.

In the instant case, the ALJ opined that Jackson could perform less than a full range of light work with a sit/stand option. (Tr. 38). In arguing that the ALJ misapplied SSR 83-12, Jackson manipulates the effective meaning of 83-12 by conveniently overlooking the statement requiring a VE to clarify the implications a sit/stand option may have on an occupational base. (Pl.'s Br. 8). As an aside, Jackson's crude criticism that the VEs "obviously don't know about unskilled work and the *at will* part," and that VEs may be unreliable because they "have a vested interest in being repeatedly called to testify to make a living" is also misguided. (Pl.'s Br. 8). If Jackson felt that the VE was unqualified to testify, she should have raised that objection at the

hearing, where her attorney was asked if there were any objections to the VE's ability to serve on the case. (Tr. 76). Jackson's attorney made no such objection. (Tr. 76). The fact that Jackson had a different attorney representing her at the hearing than on this appeal is irrelevant. *See Geyen v. Sec'y of Health and Human Servs.*, 850 F.2d 263, 264 (5th Cir. 1988) (declining to adopt a general rule that required remand "whenever applicant acquires a new lawyer with a new idea").

Claiming error on the fact that the DOT provides no guidance for sit/stand options is also unfounded. As outlined above, this circuit highly values a VE's testimony because of their unique ability to testify to the particular abilities of a claimant in a particular job. Disability determinations based *solely* on the DOT will cannot be upheld. *Carey*, 230 F.3d at 145. It would follow, then, that requiring a VE's testimony to echo the DOT would go against not only the policies of this circuit, but also the very purpose of acquiring a VE testimony.

This point of error must be hastily dismissed.

## IV.   Substantial Evidence Supports the ALJ's Decision; the DDS Opinions were not "Stale"

In her fourth point of error, Jackson argues—without citing any authority whatsoever—that the DDS opinions relied on by the ALJ were "stale" and thus, could not substantiate the ALJ's decision. (Pl.'s Br. 10-12). Specifically, Jackson argues that the ALJ should not have given the DDS doctors' opinions great weight, and that their opinions had become "stale" by the time the disability decision was rendered. (Pl.'s Br. 10-12). Additionally, Jackson briefly raises a question regarding treating physicians. (Pl.'s Br. 12). For the reasons below, this Court finds Jackson's arguments without merit.

An ALJ must review all the medical findings and evidence to determine whether a "disabled" finding is supported by the record. SSR 96-5p, 1996 WL 974183. In addition to medical opinions, the ALJ must also consider the record as a whole in making a disability

determination. 20 C.F.R. § 404.1527(b); SSR 96-6p, 1996 WL 374180 (Jul. 2, 1996). The ALJ

has broad discretion in weighing medical opinion evidence. *See* 20 C.F.R. § 404.1527(d). State

agency medical and psychological consultants are regarded as experts in social security disability

cases and their opinion can be afforded great weight if supported by the evidence in the record.

20 C.F.R. § 404.1527(b); SSR 96-6p.

It is well-established that an ALJ can consider all the evidence in the record without

directly addressing each piece of evidence in his opinion. *Ramirez v. Colvin,* No. 2:12-CV-262,

2014 WL 1293888, at *10 (N.D. Tex. Mar. 28, 2014) (citing *McFadden v. Astrue*, 465 Fed.

App'x. 557, 559 (7th Cir. 2010) ("an ALJ. . . need not discuss every piece of evidence in the

record")); *Black v. Colvin*, No. 2L12-CV-0233, 2014 WL 1116682, at *5 (N.D. Tex. Mar. 20,

2014); *Jefferson v. Barnhart*, 356 F. Supp.2d 663, 675 (S.D. Tex. Mar. 12, 2004) ("in

interpreting the evidence and developing the record, the ALJ need not discuss every piece of

evidence"); *Loral Defense Systems-Akron v. N.L.R.B.,* 200 F.3d 436, 453 (6th Cir. 1999) ("an

ALJ can consider all the evidence without directly addressing in his written decision every piece

of evidence submitted by a party."). Thus, as long as the ALJ's opinion shows a clear basis of his

assessment, further discussion is not required. *Black,* 2014 WL 1116682, at *2 (citing *Penalver*

*v. Barnhart*, No. SA-04-CA-1107-RF, 2005 WL 2137900, at *6 (W.D. Tex. Jul. 13,2005) ("[t]he

ALJ may not have discussed all of the evidence in the record to the extent desired by Plaintiff,

but the ALJ is only required to make clear the basis of his assessment—he need not discuss all

supporting evidence or evidence rejected.")).

First, Jackson's off-handed remark asking "what of the treating physicians?" is

unfounded. Jackson argues that the ALJ erred by neither acknowledging nor explaining the

weight he gave the treating physicians. (Pl.'s Br. 12). However, there is no evidence in the record

that any of Jackson's treating physicians provided opinions on her mental or physical functional limitations. This argument cannot stand.

Second, the ALJ considered all of Jackson's symptoms along with all the evidence in the record in making his findings. (Tr. 38). He also, as previously discussed, considered all her impairments, or combination of impairments, along with the evidence presented in the record including "those exhibits not cited to in the decision." (Tr. 38). Moreover, it is patently clear that the ALJ considered the DDS opinions in conjunction with the record as a whole. (Tr. 39-42). In addition to discussing medical records available to the DDS employees, the ALJ references the medical evidence presented *after* the date of the DDS opinions. (Tr. 39-42). Specifically, the ALJ notes that Jackson's August 2011 heart catheterization showed no blockage; that in July 2010, she admitted she felt stronger walking and mowed her lawn, that she noticed improvements when walking up inclines; that in May 2010, there was no mention of neck pain; and that in October 12, 2011, (after the date of the hearing), Jackson was diagnosed with OSA but was not using her CPAP machine. (Tr. 39-42). The ALJ also found that the opinions of the DDS employees were adequately corroborated by the medical evidence of record. (Tr. 42). True, the ALJ does not address every piece of evidence contained in the record, but as this court has just discussed, he is not required to. Courts cannot disturb the Agency's determination when it is supported by substantial evidence. This Court finds that the ALJ had substantial evidence to render his decision of disability and thus, dismisses this point of error.

## V.     The ALJ's Credibility Determination was Properly Assessed

Jackson's last point of contention is that the ALJ improperly assessed her credibility. (Pl.'s Br. 12-14). To this end, she argues that the ALJ "should have *first* evaluated [her] testimony (along with all the other evidence) according to the guidelines *and only then*

formulated an appropriate RFC, not the other way around." (Pl.'s Br. 13). She further argues that "the ALJ apparently judged the credibility of [her] testimony by comparing it to a pre-determined RFC." (Pl.'s Br. 13).

To properly evaluate a claimant's subjective complaints and credibility, the ALJ must "consider the entire case record, including the objective medical evidence, the individual's own statements about symptoms, statements and other information provided by treating or examining physicians or psychologists and other persons about the symptoms and how they affect the individual, and any other relevant evidence in the case record." SSR 96-7p, 1996 WL 374186, at *1 (July 2, 1996); *see also* 20 C.F.R. § 404.1529(c) ("We will consider whether there are any inconsistencies in the evidence and the extent to which there are any conflicts between your statements and the rest of the evidence, including your history, the signs and laboratory findings, and statements by your treating or nontreating source or other persons about how your symptoms affect you."). The ALJ must also consider the following factors when assessing a claimant's credibility:

> (1) the individual's daily activities; (2) the location, duration, frequency, and intensity of the individual's pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and (7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

SSR 96-7p, at *3. Finally, the ALJ must cite specific reasons for his credibility finding, supported by the case record, and must clearly indicate and give reasons for the weight given to the claimant's statements; it is not enough for the ALJ to make a single, conclusory statement that the claimant's allegations have been considered and are not credible. *Id*. at *2.

Still, while the ALJ must determine the credibility of complainants, ALJs have broad discretion when making credibility determinations because they must also weigh and resolve conflicts in the evidence. *Carrier v. Sullivan*, 944 F.2d 243, 247 (5th Cir. 1991). While the ALJ's credibility finding must be made with sufficient specificity, it need not follow formalistic rules. *See Falco v. Shalala* 27 F.3d 160, 163–64 (5th Cir. 1994). Even in a case in which the evidence indicates a mixed record concerning a claimant's health problems and work-related limitations, it is the ALJ's responsibility to weigh the evidence. *Chambliss v. Massanari*, 269 F.3d 520, 523 (5th Cir. 2001). "Fifth Circuit precedent [dictates that] 'an ALJ's assessment of a claimant's credibility is accorded great deference' when supported by substantial record evidence." *Newton v. Apfel*, 209 F.3d 448, 459 (5th Cir. 2000).

In the instant case, the ALJ opined that Jackson's "symptoms were not credible to the extent they are inconsistent with the . . . [RFC] assessment." (Tr. 41). This statement, standing alone, would not withstand judicial review. However, in accordance with the Regulations, the ALJ adequately considered the above-mentioned factors and indicated reasons for his credibility finding. To this end, the ALJ noted:

> In September 2009, the claimant reported she performed yard work as a hobby and enjoyed swimming in her pool. On October 7, 2009, she reported that she was able to return to normal activities without an increase in pain. . . [In April 2010,] the claimant arrived at the consultative examination along [sic] and drove herself from the neighboring community. . . [In July 2010,] the claimant reported she felt stronger when walking [and] mowed the lawn the day before. . . Her medical history in September 2009 did not reflect a stroke or heart attack. However, in April 2010, she reported that she had a stroke in November of 2008.

(Tr. 41). The ALJ considered this evidence along with the remaining evidence on the record and Jackson's testimony at the hearing. (Tr. 38-42). Although the ALJ does not specifically address each of the above-listed factors, he, nonetheless, made adequate consideration of the factors. Based on these considerations, the ALJ found that Jackson's symptoms were not credible to the

extent they were inconsistent with the RFC finding. This finding is not ill-founded. The ALJ's

opinion is scattered with evidence he considered in making this determination. (Tr. 27-42).

Further, Jackson's assertions that the ALJ should have first evaluated her testimony in

accordance with the guidelines, is misplaced. Notably, Jackson cites to no authority that is

binding on this Court. (Pl.'s Br. 13). As stated above, it is the policy and precedent in our circuit

to grant the ALJ's credibility findings great deference when the findings are supported by

substantial evidence. This Court finds that the ALJ's credibility determination was supported by

substantial evidence, and thus, in accordance with the precedent of the Fifth Circuit, this point of

error is dismissed.

**Conclusion**

For the foregoing reasons, the decision of the Commissioner is **AFFIRMED** and Case's

complaint is **DISMISSED** with prejudice. Any appeal shall be to the Court of Appeals for the

Fifth Circuit in accordance with 28 U.S.C. § 636(c)(3).

**SO ORDERED** this 15th day of September, 2014.

_____

**E. SCOTT FROST**
**UNITED STATES MAGISTRATE JUDGE**